UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

DEMETRIOUS SAYLES,

                            Defendant.
_____

Case # 16-CR-161-FPG

DECISION AND ORDER

## INTRODUCTION

On April 23, 2020, Defendant Demetrious Sayles filed a Motion for Compassionate Release. ECF No. 51. Defendant requests that the Court reduce his sentence to time served because of the ongoing Coronavirus Disease 2019 ("COVID-19") pandemic. *Id.* The Government opposes the Motion. ECF No. 53. For the reasons that follow, Defendant's Motion is DENIED.

## BACKGROUND

On January 16, 2018, Defendant pleaded guilty to one count of possession with intent to distribute, and distribution of, 28 grams or more of a mixture or substance containing cocaine base pursuant to 21 U.S.C. § 841(a)(1)—a charge that carries a mandatory minimum term of imprisonment of five years and a maximum term of forty years. ECF Nos. 5, 33, 35; 21 U.S.C. § 841(b)(1)(B). Defendant was sentenced on June 25, 2018 to seventy-seven months in the custody of the Federal Bureau of Prisons ("BOP") and five years' supervised release. ECF Nos. 48, 49. Defendant is projected to be released on May 27, 2021, but his sentence may be reduced by up to one year if he satisfies the requirements of the Residential Drugs and Alcohol Program ("RDAP"). ECF No. 53 at 1; ECF No. 54 at 4.

1

## LEGAL STANDARD

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, No. 02-CR-743, 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). Section 3582(c)(1)(A) provides criminal defendants the opportunity to move courts to reduce previously imposed terms of imprisonment, often referred to as compassionate release. 18 U.S.C. § 3582(c)(1)(A). Defendants may bring motions under Section 3582(c)(1)(A) if they have satisfied a statutory exhaustion requirement.[1] *Id.* The Court may grant relief if it finds that (1) "extraordinary and compelling reasons warrant [the] reduction" and (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* If these elements are satisfied, the Court is to consider the factors set forth in Section 3553(a), which describes the factors courts are to consider in imposing sentences. *Id.* §§ 3553(a), 3582(c)(1)(A). In analyzing these elements and factors, "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Tagliaferri*, No. 13-CR-115, 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019). If the Court grants such a motion, it may reduce the defendant's term of imprisonment and may correspondingly impose a term of probation or supervised release, with or without conditions, provided that such a term does not exceed the unserved portion of the original term of imprisonment. 18 U.S.C. § 3582(c)(1)(A).

## DISCUSSION

In this case, even if Defendant could establish that extraordinary and compelling reasons warrant a reduction and it would be consistent with the applicable Sentencing Commission policy statement, a sentence reduction would not be warranted. Defendant has not presented any evidence that causes the Court to reconsider its prior evaluation of the factors set forth in Section 3553(a).

---

[1] The Government does not dispute that the statutory exhaustion requirement has been satisfied in this case. ECF No. 53 at 6.

2

Under Section 3553(a), a court must consider the following factors when it imposes a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range [provided for by Sentencing Commission guidelines and policy statements];
> (5) any pertinent [Sentencing Commission policy statement];
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3552(a).

The Court weighed these factors when it imposed Defendant's original term of imprisonment approximately two years ago. Accordingly, the Court's task here is not to "second guess or to reconsider whether the original sentence was just," but to assess whether "the defendant's circumstances are so changed . . . that it would be inequitable to continue the confinement of the prisoner." *United States v. Ebbers*, No. 02-CR-114, 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020) (internal quotation marks omitted) (discussing legislative history of provision). In other words, the issue is whether the original Section 3553 factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and, in particular, "whether compassionate release would undermine the goals of the original sentence." *Id.* at *7.

Defendant claims that "extraordinary and compelling" reasons support his release because COVID-19 presents a particular threat to him. ECF No. 51 at 1. For purposes of this motion, the Court accepts that Defendant is prediabetic and suffers from mild asthma.[2] *Id.*; ECF No. 53 at 6, 8; ECF No. 55 at 1. Even assuming these conditions are sufficient to raise the risk of COVID-19 infection or complications, Defendant has not proffered evidence reflecting the degree of increased risk he faces in prison relative to the risk he would face if the Court were to order his release. *See United States v. Veras*, No. 19-CR-10, 2020 WL 1675975, at *4 (M.D. Pa. Apr. 6, 2020) ("[T]he potential for exposure exists anywhere in the community, not just in jail . . . .").

Defendant is currently incarcerated in Pennsylvania at the Federal Correctional Institute McKean's minimum-security satellite camp ("FCI McKean"). ECF No. 51 at 2. FCI McKean houses a total of 794 inmates, 185 of which are housed in the camp. *FCI McKean*, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/locations/institutions/mck/ (last visited June 10, 2020). Currently, there is no evidence that COVID-19 has infected inmates or staff at FCI McKean. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus/ (last visited June 10, 2020); ECF No. 53 at 10; ECF No. 54 at 4. Defendant argues that the dangers of COVID-19 infection at his facility are evidenced by the staff asking inmates to update their next of kin information for notification in case of death or illness and a staff member telling inmates that contraband was still filtering into the camp, showing that infection could permeate the prison as well. ECF No. 51 at 2; ECF No. 55 at 1. But even accepting Defendant's allegations as true,

---

[2] Defendant may not be prediabetic. ECF No. 54 at 2. It also appears that Defendant did not regularly use an inhaler prior to the COVID-19 outbreak. ECF No. 53 at 8; ECF No. 54 at 2. He requested an inhaler two days before filing his motion and reported on April 21, 2020 that he had not had an asthma attack in twelve years. ECF No. 54 at 2. Although this raises suspicion regarding the sincerity of Defendant's need for an inhaler, the Court gives Defendant the benefit of the doubt and assumes for purposes of this motion that Defendant needs an inhaler and suffers from mild asthma.

these allegations do not show that Defendant faces a greater risk of infection inside FCI McKean than he would face if he were released.³

Without evidence suggesting the risk he faces while incarcerated is greater than the risk he would face if released, the threat of COVID-19 does not provide a basis for revaluation of the Section 3553(a) factors. COVID-19 does not "warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Gold*, No. 15-CR-330, 2020 WL 2197839, at *1 (N.D. Ill. May 6, 2020) (internal quotation marks omitted); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *cf. United States v. Seshan*, No. 14-CR-620, 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (collecting cases in which courts denied compassionate release to inmates with serious medical conditions). The risk faced by Defendant because of COVID-19, whether in BOP custody or otherwise, does not provide a basis for the Court to revaluate the Section 3553(a) sentencing factors.

Defendant also suggests that his "minimum" security level classification and enrollment in RDAP supports his release. ECF No. 51 at 3. The Court commends Defendant for his participation

---

³ Defendant also cites the close proximity of inmates in FCI McKean's dormitory style housing as a basis for increased infection risk. ECF No. 55 at 1. It is not clear that Defendant's housing arrangement is particularly crowded. Defendant is housed with eighty-five other inmates, but his unit has beds for 146 inmates. ECF No. 54 at 1. Although the Court accepts that close proximity to other individuals could increase the rate of infection once COVID-19 was present in FCI McKean, there are not currently reported cases within FCI McKean. Further, because of the screening of staff, the limitations on visitors, and the movement and other limitations imposed on prisoners, ECF No. 53 at 11–15 (describing BOP's COVID-19 response), maintaining that status quo at FCI McKean may be more feasible than limiting community spread outside of prison walls. Also, if COVID-19 does permeate FCI McKean, it appears evident that quarantining potentially infected individuals and tracing their contacts will be easier inside tightly controlled BOP facilities than outside the strictures of such an environment. Although Defendant criticizes the BOP's COVID-19 response and some criticism may be justified, ECF No. 55 at 1, the BOP's response at FCI McKean appears to have been successful so far.

in RDAP and for his apparent good behavior[4] allowing him to maintain a minimum-security level classification, but Defendant's behavior in prison does not alter the Court's evaluation of the Section 3553(a) factors, particularly in light of Defendant's extensive criminal record. ECF No. 54 at 4.

The Court recognizes that the situation Defendant finds himself in is of serious concern: as an inmate, he has far less control over his environment and is far more reliant on correctional officials to ensure his safety during the pandemic. "A just punishment should not include an unacceptable risk of exposure to COVID-19 or any potentially lethal disease." *United States v. Vence-Small*, No. 3:18-CR-31, 2020 WL 2214226, at *4 (D. Conn. May 7, 2020). But neither should the uncertainty engendered by the present crisis be allowed to distort or subvert a just punishment. Even in light of his medical conditions, Defendant has not demonstrated that a reduction in his sentence is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release, ECF No. 51, is DENIED.

IT IS SO ORDERED.

Dated: June 11, 2020
       Rochester, New York

                                              HON. FRANK P. GERACI, JR.
                                                          Chief Judge
                                        United States District Court

---

[4] Defendant's advancement in the RDAP program has been stymied by a disciplinary violation for entering an unauthorized area. ECF No. 54 at 3–4. Defendant's actions violated social distancing protocols, which again calls the sincerity of his COVID-19 related concerns into question. *Id.*